IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF MISSISSIPPI

IN RE:   DIANNE WILDMAN                              CASE NO. 08-10314-DWH-13

**VANDERBILT MORTGAGE AND FINANCE, INC.'S MOTION FOR RELIEF FROM THE AUTOMATIC STAY AND CO-DEBTOR STAY AND FOR ABANDONMENT OF PROPERTY FROM DEBTOR'S ESTATE**

Vanderbilt Mortgage and Finance, Inc. (successor servicing agent to Oakwood Acceptance Corporation, LLC), the duly authorized servicing agent for The Bank of New York Company, Inc. as Trustee, successor Trustee to JPMorgan Chase Bank, National Association, as Trustee (formerly JPMorgan Chase Bank, as Trustee) ("Movant" or "Vanderbilt")[1], files this Motion for Relief from the Automatic Stay now protecting the interests of the Debtor, Dianne Wildman ("Debtor"), and the Co-Debtor, Melissa Wileman ("Co-Debtor"), in certain personalty and for abandonment of same from Debtor's estate; and in support thereof would show as follows, to-wit:

1.  This Court has jurisdiction over the subject matter herein and the parties hereto pursuant to 28 U.S.C. §1334, 11 U.S.C. §362, 11 U.S.C. §1301 and 11 U.S.C. §554, along with other related statutes and rules. This is a core proceeding as defined by 28 U.S.C. §157(b)(2)(A) and (G).

2.  On September 5, 1997, the Debtor and Co-Debtor executed a Manufactured Home Retail Installment Contract - Mississippi ("Contract") in the amount of $47,181.75. A copy of the Contract, now serviced by Vanderbilt, is attached hereto and incorporated herein by reference as part of collective Exhibit "1." To secure this indebtedness, the Debtor and Co-Debtor granted Movant a valid and first perfected security interest in one (1) 1998 Destiny

---

[1] An Affidavit of Claim and Assignment of Security Interest and Debt describing, *inter alia*, Vanderbilt's status as servicer and its relationship to Oakwood Acceptance Corporation, LLC is attached hereto and incorporated herein by reference as part of collective Exhibit "1."

625547

manufactured home bearing Vehicle Identification Number OW58949AB ("manufactured home"). A copy of the UCC-1 Financing Statement evidencing Movant's lien is attached hereto and incorporated herein by reference as part of collective Exhibit "1."

3.  On January 29, 2008, the Debtor filed her voluntary petition for relief pursuant to Chapter 13, Title 11 of the United States Code. Subsequent thereto, the Debtor proposed and confirmed a Chapter 13 plan of reorganization on May 27, 2008, that that requires, *inter alia*, the Debtor to commence making "direct" monthly mortgage payments of $519.51 to Vanderbilt beginning May 1, 2008. Copies of the Chapter 13 Plan and Confirmation Order are attached hereto and incorporated herein by reference as part of collective Exhibit "1." Pursuant to the terms and conditions of the contract, all payments, including the referenced "direct" payments, are due by the first (1st) day of each applicable month.

4.  Although the Debtor's confirmed Chapter 13 Plan requires "direct" monthly mortgage payments to Vanderbilt beginning May 1, 2008, the Debtor was, as of October 23, 2008, in "post-petition" arrears to Vanderbilt in the amount of $1,039.02, representing past due monthly payments under the contract and under the Debtor's confirmed Chapter 13 Plan for the months of September and October, 2008. Thus, the Debtor is not fulfilling the terms and conditions of her confirmed Chapter 13 Plan and, furthermore, Vanderbilt is not being "adequately protected" as contemplated by 11 U.S.C. §362(d)(1). An Affidavit executed by Lisa Swink, legal accounts representative for Vanderbilt, attesting to the arrearage is attached hereto and incorporated herein by reference as part of collective Exhibit "1." Accordingly, the automatic stay now protecting the Debtor's and Co-Debtor's interests in Vanderbilt's collateral should lift and, furthermore, the manufactured home should be abandoned from the Debtor's estate pursuant to the directives of 11 U.S.C. §554.

625547

5. The automatic stay affecting the Debtor's and Co-Debtor's interests in the manufactured home should lift "for cause" since Vanderbilt's interests are not being adequately protected as contemplated by 11 U.S.C. § 362(d)(1).

6. Since the Debtor is not fulfilling the terms and conditions of her confirmed Chapter 13 Plan, Movant's interests in the manufactured home are being "irreparably harmed" by the continuation of the "co-debtor stay" as contemplated by 11 U.S.C. § 1301(c)(3). As such, the "co-debtor stay" now protecting Melissa Wileman should likewise lift.

7. Furthermore, insurance on the manufactured home is scheduled to expire on October 28, 2008, and Vanderbilt has not received any proof of additional insurance or an indication from the Debtor that proof of same will be provided. As such, Vanderbilt requests that the Debtor provide immediate proof of insurance as required by the contract upon lapse of the current policy. Alternatively, Vanderbilt requests that it be allowed to recoup monies it prospectively advances for the purchase of lender placed insurance pursuant to the contract either by the filing of an amended proof of claim, by agreement or other means that are deemed appropriate to this Court as suggested in the Court's standing order concerning this issue which became effective August 1, 2008.

8. The provisions of Rule 4001 of the Federal Rules of Bankruptcy Procedure which would stay for ten (10) days the relief requested by Vanderbilt herein should be waived or otherwise not apply.

9. For other good and sufficient reasons to be assigned at a hearing regarding this matter.

WHEREFORE, Vanderbilt respectfully requests the entry of an order from this Court lifting the automatic stay, as contemplated by 11 U.S.C. §362, and the co-debtor stay, as

625547

contemplated by 11 U.S.C. §1301, now protecting the Debtor's and Co-Debtor's interests in the manufactured home and, furthermore, for abandonment of same from the Debtor's estate. Vanderbilt prays for other general and specific relief as this court may deem just.

                                                  Respectfully submitted,

                                                  Vanderbilt Mortgage and Finance, Inc.,


                            BY:    /s/ James P. Wilson, Jr. ( MB#10783)

Of Counsel:

Mitchell, McNutt & Sams
A Professional Association
215 Fifth Street North
Post Office Box 1366
Columbus, Mississippi 39703-1366
Telephone: 662.328.2316

625547

## CERTIFICATE OF SERVICE

I, James P. Wilson, Jr., one of the attorneys for Vanderbilt Mortgage and Finance, Inc., do hereby certify that I have served a true and correct copy of the above and foregoing Motion for Relief from the Automatic Stay and Co-Debtor Stay and for Abandonment of Property from Debtor's Estate to all parties and counsel of record by placing said copy in the United States Mail, postage prepaid and/or electronic filing addressed to them at their usual addresses as follows:

> Robert F. Levey
> P.O. Box 743
> Tupelo, MS 38802-0743
> *Attorney for Debtor*
>
> Tammy Wileman
> 127 Road 1559
> Nettleton, MS 38858
> Co-Debtor
>
> Terre M. Terre Vardaman
> Post Office Box 1326
> Brandon, Mississippi 39043-1326
> *Chapter 13 Trustee*
>
> U.S. Trustee
> 100 West Capitol Street
> Suite 706
> Jackson, MS 39269

This the 24th day of October, 2008.

/s/ James P. Wilson, Jr.

625547

## AFFIDAVIT OF CLAIM

Personally appeared before me the undersigned authority, LISA SWINK, who stated and deposed as follows:

1. My name is LISA SWINK and I hold the position of BANKRUPTCY SPECIALIST with Vanderbilt Mortgage and Finance, Inc. ("Vanderbilt"), a corporation organized and existing under the laws of the State of Tennessee.

2. That I am familiar with the books and records of Vanderbilt relating to the Debt (hereinafter described); that the books and records are kept in the normal course of business; that the books and records are kept under my supervision and control; and, that the transactions reflected in the books and records are and have been recorded at or near the time that they occur or occurred.

3. The Debt (hereinafter described) is owned by:

    ☒ JP Morgan Chase Bank, As Trustee
    ☐ The Bank of New York, As Trustee
    ☐ Wells Fargo Bank, National Association, As Trustee
    ☐ Other: _____

    (the "Trustee"), for the benefit of purchasers of pass-through certificates ("Certificateholders") and the Trustee has authorized, and/or granted permission to, Vanderbilt to do any and all acts and things reasonably necessary to enforce (including the right to bring suit, file proofs of claim in bankruptcy and otherwise act in Vanderbilt's name or in the name of the Trustee), collect, service, administer or otherwise act in any such manner or fashion as the Trustee could act as owner of the following described debt (herein, respectively, "Service the Debt" or "Servicing the Debt" and "Debt"):

    Debtor under Promissory Note, Retail Installment Contract or Assumption Agreement ("Debt Instrument") and Grantor of Security Agreement, Mortgage or Deed of Trust ("Security Instrument"):

    <u>DIANNE WILDMAN & MELISSA WILEMAN</u>          ("Debtor")

    Date of Debt Instrument and Security Instrument: <u>09/05/97</u>
    Vanderbilt Account Number: <u>419635</u>

    Lender/Creditor and Mortgagee or Beneficiary of Deed of Trust:
    ☐ Oakwood Acceptance Corporation, LLC
    ☒ Oakwood Acceptance Corporation
    ☐ Oakwood Acceptance Corporation dba Nationwide Mortgage Company
    ☐ Oakwood Acceptance Corporation dba Golden Circle Financial Services
    ☐ Deutsche Financial Capital Limited Liability Company
    ☐ Other: _____

4. Vanderbilt is Servicing the Debt for the benefit of the Trustee and the Certificateholders.

5. Vanderbilt's Servicing the Debt, and other debts owned by the Trustee, came about in the following manner. Oakwood Acceptance Corporation, LLC, a limited liability company formerly organized under the laws of the State of Delaware (successor by merger to Oakwood Acceptance Corporation, a corporation formerly organized under the laws of the

**EXHIBIT 1**

State of North Carolina and herein "Oakwood" or "OAC, LLC") on November 15, 2002 filed for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") (Consolidated Case No. 02-13396). Oakwood's plan of reorganization provided for a sale of substantially all of Oakwood's assets to Clayton Homes, Inc. ("Clayton"), parent of Vanderbilt. The plan of reorganization also provided for an affiliate of Vanderbilt to assume and be assigned the right to service this and other Debt owned by the Trustee. The plan of reorganization was confirmed by Confirmation Order dated March 31, 2004 and the assumption and assignment of the right to service this Debt and other debts owned by the Trustee were approved by a separate order of the Bankruptcy Court of the same date. The Trustee has further expressly authorized or permitted Vanderbilt to Service the Debt.

6. Vanderbilt holds a perfected security interest in the following collateral in respect to the account of said Debtor:

<u>1998 OAKWOOD SERIAL NUMBER OW58949AB</u>

In the opinion of the undersigned affiant, the fair and reasonable market value of said collateral is the sum of $<u>$32,000.00</u>, this opinion being based upon NADA valuations and other factors.

7. The Debtor ☒ has ☐ has not allowed physical damage insurance to expire.

8. Amount of monthly payment of Debtor (all):                                         $    <u>519.51</u>
   Number of [pre-petition] payments past due (Ch. 13 or C&D): _____
   Total amount of [pre-petition] past due payments (Ch. 13 or C&D):    $_____
   Number of [post-petition] payments past due (Ch. 13):        <u>2</u>
   Total amount of [post-petition] past due payments (Ch. 13):           $   <u>1,039.02</u>

   Total amount of pre and post petition past due payments (Ch. 7):      $_____

   Current net payoff amount of the above account (all):                 $  <u>38,308.64</u>

No part thereof has been paid or satisfied; no offsets or counter-claims exist with respect to said account, to the knowledge or belief of the deponent.

9. That the above statements are true to the best of my knowledge and belief.

Dated this 23RD day of OCTOBER, 2005.

_____
Affiant

Sworn to and subscribed before me this the 23RD day of OCTOBER, 2005.

_____
NOTARY PUBLIC

My Commission Expires: <u>7-12-10</u>

Teresa Deal
NOTARY PUBLIC
Randolph County
North Carolina
My Commission Expires

**ASSIGNMENT OF SECURITY INTEREST AND DEBT (OAC, LLC)**

For value received, OAKWOOD ACCEPTANCE CORPORATION, LLC ("OAC, LLC"), successor by merger to Oakwood Acceptance Corporation ("OAC"), hereby assigns, transfers and conveys to VANDERBILT MORTGAGE AND FINANCE, INC. ("VMF") all of OAC's right, title and interest (including, without limitation, specifically the right to service and collect) in and to the following described Manufactured Home Retail Installment Contract; Promissory Note, Security Agreement and Federal Disclosures or other form of debt instrument ("Contract"), including the security interest of OAC, LLC in the manufactured home and other collateral which secures such Contract:

    Date of Contract: 09/05/97
    Purchaser(s)/Borrower(s): DIANNE WILDMAN
    Seller/Creditor: Oakwood Acceptance Corporation, LLC
    OAC, LLC Account No.: 1331958

This assignment shall be deemed effective as of the 13th day of April, 2004.

OAKWOOD ACCEPTANCE CORPORATION, LLC

By: Vanderbilt Mortgage and Finance, Inc.,
Attorney-in-Fact under Power of Attorney from
Oakwood Acceptance Corporation, LLC

By: _____

Name and Title: J. S. Griffin, Assistant Secretary

| MANUFACTURED HOME RETAIL INSTALLMENT CONTRACT MISSISSIPPI | Seller: Oakwood Homes 2501 S. Gloster St. Tupelo, MS 38801 "We" and "us" mean the Seller above, its successors and assigns. | Buyer: Darrel Wildman & Melissa Wilson 127 Dr. 1559 Nettleton, MS 38858 "You" and "your" mean each Buyer above, and guarantor, separately and together. |
|---|---|---|
| No. 09/05/97 Date | | |

SALE: You agree to purchase from us the manufactured home described below, together with any related services and furnishings, equipment, appliances, and accessories included at the time of its purchase (together referred to as "Manufactured Home"). Your purchase of the Manufactured Home is subject to the terms of this Contract. "Contract" means this document and any separate document that secures this Contract.

| Manufacturer | Model Name & Number | Year | Serial Number | Length | Width | Color | ☒ New ☐ Used |
|---|---|---|---|---|---|---|---|
| Destiny | Dalwzzi 603-24 | 1998 | DU58949AB | 60 | 28 | white/burgundy | |

Services, furnishings, equipment, appliances, and accessories include:
☐ Tires and Wheels ☐ Axles ☒ Refrigerator ___ ☒ Oven/Range ___
☐ Washer NA ___ ☐ Dryer NA ___ ☒ A/C Unit(s) ___
☐ Awning(s) NA ___ ☒ Skirting ☐ Accessory Shed NA ___
☒ Services ___
☐ Other NA ___

Location of Manufactured Home after delivery to Buyer: 127 Dr. 1559 Nettleton, MS 38858
Description of Trade-In: NA
SECURITY: To secure your payment and performance under the terms of this Contract, you give us a security interest or chattel mortgage security interest in the Manufactured Home and, unless prohibited by law, all parts, accessories, repairs, improvements, and accessions to the Manufactured Home and all proceeds, products, and benefits from it.
☐ This Contract is also secured by a separate mortgage or deed of trust dated ___ , on real estate, as shown in the TRUTH IN LENDING DISCLOSURES.
The term "Property" means all property securing this Contract.
PROMISE TO PAY AND PAYMENT TERMS: You promise to pay us the principal amount of $ 49,181.75 ___ , plus interest on the unpaid balance at the rate(s) of 12.0% ___ per year until the final scheduled payment date. Interest will begin to accrue on 30 days prior to first payment due date and will accrue on a 30/360 ___ day basis. After the final scheduled payment date, or after you default and we demand payment, we will earn interest on the unpaid balance at the rate of 12.0% per year. You agree to pay this Contract according to the payment schedule and late charge provisions shown in the TRUTH IN LENDING DISCLOSURES. You also agree to pay any additional amounts according to the terms of this Contract. A late charge, if provided in the TRUTH IN LENDING DISCLOSURES, will be imposed only once on a late payment. A late charge will not be collected on the final scheduled payment, but interest will continue to accrue at the applicable contract rate.
☐ ADDITIONAL FINANCE CHARGE: You agree to pay an additional, nonrefundable finance charge of $ ___ that will be ☐ paid in cash. ☐ financed (see ITEMIZATION OF AMOUNT FINANCED). ☐ paid proportionally with each payment.
DOWN PAYMENT: You also agree to pay, or apply to the Cash Price, on or before today's date, any cash, rebate and net trade-in value described in the ITEMIZATION OF AMOUNT FINANCED.
☒ ESCROW: You ☒ may, but are not required to ☐ must pay certain expenses and fees into an escrow account. If an escrow account is established, it will be governed by a separate agreement.

**TRUTH IN LENDING DISCLOSURES**

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | AMOUNT FINANCED The amount of credit provided to you or on your behalf. | TOTAL OF PAYMENTS The amount you will have paid when you have made all scheduled payments. | TOTAL SALE PRICE The total cost of your purchase on credit, including your down payment of $ 2500.00 |
|---|---|---|---|---|
| 12.0 % | $ 77,503.05 | $ 49,181.75 | $ 124,684.80 | $ 127,184.80 |

Payment Schedule: Your payment schedule will be

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 240 | $ 519.51 | monthly, beginning November 1, 1997 |

Security: You are giving a security interest in the Manufactured Home purchased.
☐ You are giving a security interest in the real property at ___
☒ Filing Fees: $ 10.00
☒ Late Charge: If a payment is more than 15 ___ days late, you will be charged the lesser of 4% of the unpaid amount or $ 3.50 whichever is greater.
Prepayment: If you pay off this Contract early, you will not have to pay a penalty.
☐ If you pay off this Contract early, you will not be entitled to a refund of part of the Additional Finance Charge.
ASSUMPTION: Someone buying your Manufactured Home may be allowed to assume this Contract on its original terms, subject to certain conditions.
Contract Provisions: You can see the terms of this Contract for any additional information about nonpayment, default, any required repayment before the scheduled date, and prepayment refunds and penalties.   "e" means an estimate

CREDIT LIFE INSURANCE: Credit life insurance is not required to obtain credit and we will not provide it unless you sign and agree to pay the additional cost. If you want such insurance, you may attempt to purchase it through us (if you qualify for coverage). We are quoting below ONLY the coverages you have chosen to purchase.
Credit Life: Insured NA
☐ Single ☐ Joint   Cost $ -0-   Term -0-

Your signature below means you want the insurance coverage(s) at the cost quoted above. If none are quoted, you have declined any coverages we offered.

NA ___ d/o/b ___ NA ___ d/o/b
Buyer                    Buyer

PROPERTY INSURANCE: You are required to insure the Property securing this Contract in an amount equal to the lesser of your principal balance or the value of the Property. You may purchase or provide the insurance through any insurance company of your choice. We may refuse to accept for reasonable cause an insurance company chosen by you. If you purchase insurance through us, such insurance may contain coverages in addition to those required and you should study the coverages carefully to determine what is appropriate for you. We are quoting below ONLY the coverages you have chosen to purchase.
$ -0- ___ for a term of -0- ___ years.
Liability insurance coverage for bodily injury and/or property damage caused to others is NOT included in this Contract unless checked and indicated below.
☐ The following liability insurance is included in this coverage:
NA
Your signature below means you want to purchase the insurance through us at the price quoted above.

NA ___ NA ___
Buyer                    Buyer

☐ BUYER PROTECTION/SERVICE PLAN: By signing below, you have elected to purchase a buyer protection or service plan ("Plan") provided by NA ___ . The Plan will be in effect ___ from the date of this Contract at a cost of $ -0- ___ . See the Plan documents for details. Such Plan is not required and is not a condition of credit.
Your signature below means you want the Plan quoted above.

NA ___ NA ___
Buyer                    Buyer

**ITEMIZATION OF AMOUNT FINANCED**

Manufactured Home Price                                         $ 49,671.75
(including sales tax of $ 1446.75 ___ )
Buyer Protection/Service Plan, Paid to: NA                      $ -0-
                                                    1. Cash Price $ 49,671.75
Dealer's/Manufacturer's Rebate $ -0-
Cash Down Payment $ 2500.00
                                        2. Subtotal $ 2500.00
Trade-In Allowance        $ -0-
Less: Amount Owing        $ -0-
To: NA
                                  3. Net Trade-In $ -0-
                     4. Total Down Payment (line 2 plus line 3) $ 2500.00
5. Unpaid Balance of Cash Price (line 1 minus line 4) $ 47,171.75
Fees Paid to Others:
Paid to Public Officials - Filing Fees Only    $ 10.00
Paid to Public Officials - Other than Filing Fees $ -0-
Paid to Insurance Companies                    $ -0-
  (To: NA ___ )
  (To: NA ___ )
  (To: NA ___ )
  (To: NA ___ )
Paid to Seller – Additional Finance Charges    $ -0-
Paid to: NA                                    $ -0-
Paid to: NA                                    $ -0-
Paid to: NA                                    $ -0-
Paid to: NA                                    $ -0-
6. Subtotal (line 5 plus all Fees Paid to Others) $ 47,181.75
                        7. Prepaid Finance Charges $ -0-
             Amount Financed (line 6 minus line 7) $ 47,181.75

NOTICE TO BUYER
(1) Do not sign this agreement before you read it or if it contains any blank spaces. (2) You are entitled to a completely filled-in copy of this agreement. (3) Under the law, you have the right to pay off in advance the full amount due without penalty.
BY SIGNING BELOW BUYER AGREES TO THE TERMS ON PAGES 1 AND 2 OF THIS CONTRACT AND ACKNOWLEDGES RECEIPT OF A COPY OF THIS CONTRACT.

Buyer(s):
X Darrel Wildman ___ 09/05/97
Signature                     Date
X Melissa Wilson ___ 09/05/97
Signature                     Date
X ___
Signature                     Date
X ___
Signature                     Date

SELLER'S SIGNATURE:
X Oakwood Homes
Name and Title ___ Jeff Taggart ___ , manager

ASSIGNMENT: This Contract is assigned to Assignee (identify):
Oakwood Acceptance Corp.
P.O. Box 9601 Charlotte, NC 28296-0011
This assignment is made ☒ under the terms of a separate agreement. ☐ under the terms of the ASSIGNMENT BY SELLER section in this Contract. ☐ This assignment is made with recourse.
Seller By: Oakwood Homes ___ Date 09/05/97
Name and Title: Jeff Taggart ___ , manager

White-Original   Yellow-Dealer Copy   Pink-Dealer Copy   Gold-Buyer Copy
MISSISSIPPI MANUFACTURED HOME RETAIL INSTALLMENT CONTRACT
© 1996 Access Systems, Inc., St. Cloud, MN (1-800-397-2341) Form OME-MSS-MH (page 1 of 2)

## ADDITIONAL TERMS OF THIS CONTRACT

**GENERAL TERMS:** You agree to purchase the Manufactured Home over time. The Total Sale Price shown in the TRUTH IN LENDING DISCLOSURES assumes that all payments will be made as scheduled. The actual amount you will pay may be more or less depending on your payment record.

The law of Mississippi will govern this transaction. It is also governed by applicable federal law and regulations, including the preemption of state usury laws. The federal Alternative Mortgage Transactions Parity Act may also apply.

We do not intend to charge or collect any interest or fee that is more than the applicable law allows. If we charge or collect any amount over what the law allows, we will apply the excess first to the principal balance, and we will refund any excess if you have paid this Contract in full.

If any provision of this Contract is not enforceable, this Contract will remain enforceable without such provision. If we agree with you to any exceptions to the promises or assurances in this printed Contract, such agreement must be in writing and signed by us.

Refund of any amount included in the Amount Financed will be credited to your account.

**PREPAYMENT: YOU MAY PREPAY THIS CONTRACT IN FULL OR IN PART AT ANY TIME WITHOUT PENALTY.** Any partial prepayment will not excuse any later scheduled payments until pay in full.

You may obtain from us, or the insurance company named in your policy (or certificate of insurance), a refund of any unearned insurance premiums.

**OWNERSHIP AND DUTIES TOWARD PROPERTY:** By giving us a security interest, chattel mortgage, real estate mortgage, or deed of trust in the Property you agree to the following:
A. You will defend our interests in the Property against claims made by anyone else. You will do whatever is necessary to keep our claim to the Property valid.
B. The security interest you are giving us in the Property comes ahead of the claim of any other creditor except as agreed to in writing by us. You agree to sign any additional documents or provide us with any additional information we may require to keep the priority of our claim in the Property. You will not do anything to change our interest in the Property.
C. You will keep the Property in your possession in good condition and repair. You will use the Property for its intended and lawful purposes. Unless otherwise agreed in writing, the Manufactured Home will be located at the "Location of Manufactured Home after delivery to Buyer" provided in this Contract.
D. You will not try to sell or transfer any rights in the Property without our prior written consent.
E. The Manufactured Home will remain personal property until this Contract is paid in full whether or not it is attached to the real estate. Unless we give you prior written consent, you will not allow the Manufactured Home to become a part of real estate or to otherwise lose its treatment as personal property under applicable law.
F. You will pay all taxes, fees, expenses, and assessments on the Property when due.
G. You will notify us of any loss or damage to the Property. You will provide us reasonable access to the Property for the purpose of inspection.

**DEFAULT:** You will be in default on this Contract if any one of the following occurs (except as prohibited by law):
A. You fail to make a payment when it is due.
B. You fail to perform any obligation that you have undertaken in this Contract (which includes doing something you have agreed not to do).
C. We, in good faith, believe that you cannot, or will not, pay or perform the obligations you have agreed to in this Contract.

If you default, you agree to pay our costs for collecting amounts owing, including, without limitation, court costs, attorneys' fees and fees for repossession, repair, storage, and sale of the Property securing this Contract.

If an event of default occurs as to any one of you, we may exercise our remedies against any or all of you.

**NOTICE OF DEFAULT:** If you are in default, we will send you a Notice of Default and Notice of Right to Cure Default ("Notice") when required by law. The Notice will explain why you are in default and how you can cure it. We will not accelerate the unpaid balance of this Contract, repossess or foreclose on any Property until after we send you the Notice and any cure period it describes has passed. We may not be required to send you a Notice if (1) you have abandoned the Manufactured Home, (2) you received two Notices in the prior one-year period, or (3) other extreme circumstances exist.

**REMEDIES:** If you are in default on this Contract, we have all of the remedies provided by law, this Contract, and any separate personal property security agreement, chattel mortgage, real estate mortgage, or deed of trust. Before using a remedy, we will send you any notice and wait for any cure period that the law may require for that remedy. Our remedies include the following:
A. We may require you to immediately pay us, subject to any refund required by law, the entire principal balance, plus earned interest and all other agreed charges.
B. We may, but are not required to, pay taxes, fees, expenses, assessments, or other liens or make repairs to the Property if you have not done so. Any amount we pay will be added to the amount you owe us and will be due immediately. This amount will earn interest from the date paid at the rate(s) described in the PROMISE TO PAY AND PAYMENT TERMS section. We may require that you establish and fund an escrow account if one is not already required.

C. We may require you to make the Property available to us at a place we designate that is reasonably convenient to you and us.
D. We may immediately take possession of the Property by legal process or self-help, if we do so lawfully. We may then sell the Property and apply what we receive in our reasonable expenses and then toward your obligations, as allowed by law.
E. Except when prohibited by law, we may sue you for additional amounts if the sale proceeds do not pay all you owe us.

Paragraphs C. and D. (above) apply only to personal property which may secure this Contract. The law also may impose other limits on our remedies when a residence is the security. We will tell you those limits if and when they apply to the use of our remedies.

By choosing any one or more of these remedies, we do not waive our right to later use another remedy. If we do not act on an event of default, we do not give up our right to later treat that type of event as a default.

You agree that if any notice is required to be given to you of an intended sale or transfer of the Property, notice is reasonable if mailed to your last known address, as reflected in our records, at least 10 days before the date of the intended sale or transfer (or such other period of time as is required by law). When real estate is the security, other rules may apply.

You agree that, subject to your right to recover such property, we may take possession of personal property left in or on the Property securing this Contract and taken into possession as provided above.

If the U.S. Department of Housing and Urban Development insures this Contract under its Title 1 Property Improvement and Manufactured Home Regulations, our right to make you pay off this entire Contract is subject to the limitations of those regulations.

**INSURANCE:** You agree to buy insurance on the Property with the types and amounts of coverage indicated in the PROPERTY INSURANCE section, or as we otherwise lawfully require. You must name us as loss payee on any such policy. In the event of loss or damage to the Property, we may require additional security or assurances of payment before we allow insurance proceeds to be used to repair or replace the Property. If insurance proceeds paid to us do not pay off this Contract, you are responsible for the balance. You will keep the insurance in effect until this Contract is paid in full. If the cost of property insurance is included in the Amount Financed and the insurance is canceled or terminated before this Contract is paid in full, then you agree to give us any premium refund or rebate that you receive. We will credit the refund or rebate to the amount you owe us. We may, at our option, allow you to use the refund or rebate to help pay for replacement insurance that you purchase.

If you do not keep these promises, we may buy insurance to protect our interest in the Property. The insurance we buy may include coverages beyond those we require you to buy and may be from a company you might not choose. The rate we pay may be higher than a rate you might have to pay if you buy it yourself. We will add the cost of this insurance to the amount you owe us. Any amount we pay will be due immediately. This amount will earn interest from the date paid at the applicable contract rate(s).

**OBLIGATIONS INDEPENDENT:** Each of you who signs this Contract is independently responsible to pay it and to keep the other promises made in this Contract. This is true even if:
A. Someone else has also signed it.
B. We release or do not try to collect from another who is also responsible to pay this Contract.
C. We release any security or do not try to take back any Property.
D. We give up any other rights we may have.
E. We extend new credit or renew this Contract.

**WARRANTIES:** We will provide any warranty information to you separately.

**EXCLUSION OF WARRANTIES: TO THE EXTENT PERMITTED BY APPLICABLE LAW, SELLER HEREBY EXCLUDES AND DISCLAIMS ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR ANY PARTICULAR PURPOSE.**

**WAIVER:** To the extent permitted by law, you agree to give up your rights to require us to do certain things. You do not give up any rights that are provided in this Contract (for example, see the NOTICE OF DEFAULT section). Unless the law or this Contract provide otherwise, we are not required to: (1) demand payment of amounts due; (2) give notice that amounts due have not been paid, or have not been paid in the appropriate amount, time, or manner; or, (3) give notice that we intend to make, or are making, this Contract immediately due.

**GUARANTEE:** You guarantee the payment of this Contract. You also agree that all the other terms of the Contract will apply to you.
Name _____
Signature _____

**NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

---

**ASSIGNMENT BY SELLER:** The following is not part of the Contract between you and the Seller. It is part of an agreement between the Seller and any Assignee. An "Assignee" is someone who may own this Contract or the right to receive your payments, or both.

Seller sells and assigns this Contract to the Assignee, its successors and assigns, including all its rights, title, and interest in this Contract, and any guarantee or separate security device. Seller gives Assignee full power, either in its own name or in Seller's name, to take all legal or other actions which Seller could have taken under this Contract. (SEPARATE AGREEMENT: If the Assignment is made "under the terms of a separate agreement" as indicated in the ASSIGNMENT section of this Contract, the terms of this assignment are described in a separate writing(s) and not as provided below, unless the separate writing(s) incorporate this agreement in whole or in part.)

Seller warrants:
A. This Contract represents a sale by Seller to Buyer on a time price basis and not on a cash basis.
B. The statements contained in this Contract are true and correct.
C. The down payment was made by the Buyer in the manner stated in this Contract and, except for the application of any manufacturers rebate, no part of the down payment was loaned or paid to the Buyer by Seller or Seller's representatives.
D. This sale was completed in accordance with all applicable laws and regulations.
E. This Contract is valid and enforceable.
F. The names and signatures on this Contract are not forged, fictitious, or assumed, and are true and correct.
G. This Contract is vested in the Seller free of all liens, is not subject to any claims or defenses of the Buyer, and may be sold or assigned by the Seller.
H. A completely filled-in copy of this Contract was delivered to the Buyer at the time of execution.
I. The Manufactured Home has been delivered to the Buyer in good condition and has been accepted by Buyer.
J. Seller has or will perfect a security interest in the Property in favor of the Assignee.

If any of these warranties is breached or untrue, Seller will, upon Assignee's demand, purchase this Contract from Assignee. The purchase shall be in cash in the amount of the unpaid balance (including interest) plus the costs and expenses of Assignee, including attorneys' fees.

Seller will indemnify Assignee for any loss sustained by it because of judicial set-off or as the result of a recovery made against Assignee as a result of a claim or defense Buyer has against Seller.

Seller waives notice of the acceptance of this Assignment, notice of non-payment or non-performance, and notice of any other remedies available to Assignee.

Assignee may, without notice to Seller, and without affecting the liability of Seller under this Assignment, compound or release any rights against, and grant extensions of time for payment to be made, to Buyer and any other person obligated under this Contract.

UNLESS OTHERWISE INDICATED IN THE ASSIGNMENT SECTION OF THIS CONTRACT, THIS ASSIGNMENT IS WITHOUT RECOURSE.

WITH RECOURSE: If this Assignment is made "with recourse" as indicated in the ASSIGNMENT section of this Contract, Assignee takes this Assignment with certain rights of recourse against Seller. Seller agrees that if the Buyer defaults on any obligation of payment or performance under this Contract, Seller will, upon demand, repurchase this Contract for the amount of the unpaid balance, including interest and any other charges, due at that time.

Disbursement Date: _____ (This date is for Title 1 HUD insurance purposes and may be completed after the Contract is signed to reflect the actual disbursement date, and not any estimated disbursement date. It may appear only on the original form.)

133958

**State of Mississippi UCC-1**
**Financing Statement**

**UCC-01**

1. Debtors (Last Name first for individuals)                    Book & Page:          Filed with:
                                                                                      LEE

| WILEMAN, DIANNE | | | | WILEMAN, MELISSA | | | |
|---|---|---|---|---|---|---|---|
| Last Name | First Name | | Middle Name | Last Name | First Name | | Middle Name |
| 127 DR 1559 | | | | 127 DR 1559 | | | |
| Mailing Address | | | | Mailing Address | | | |
| NETTLETON | MS | 41 | 38858 | NETTLETON | MS | 41 | 38858 |
| City | State | Cty Cd | ZIP | City | State | Cty Cd | ZIP |
| 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 | | ☐ Transmitting Utility | | 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 | | | |
| Tax ID/SSN | | | | Tax ID/SSN | | | |

2. Secured Party (Last Name first for individuals)               3. Assignee (Last Name first for individuals)

| OAKWOOD ACCEPTANCE CORP | | | | | | | |
|---|---|---|---|---|---|---|---|
| Business Name | | | | Business Name | | | |
| PO BOX 27081 | | | | | | | |
| Mailing Address | | | | Mailing Address | | | |
| GREENSBORO | NC | | 27425 | | | | |
| City | State | Cty Cd | ZIP | City | State | Cty Cd | ZIP |
| 56-1377207 | | | | | | | |
| Tax ID/SSN | | | | Tax ID/SSN | | | |

4. This financing statement covers the following types (or items) of property:

   1998 DESTINY OW58949AB

   This lien is to remain in effect until termination

5. Check if this statement is filed without the Debtor's signature to perfect a security interest in collateral
   ☐ already subject to a security interest in another jurisdiction when it was brought into this state or when Debtor's location was changed to this state
   ☐ which is proceeds if the security interest in the original collateral was perfected
   ☐ where the original filing has lapsed
   ☐ acquired after a change of name, identity, or corporate structure of the Debtor
   ☐ if lien to secure payment of royalty proceeds (effective 1 year)

   FILED LEE COUNTY MS '97 OCT 9 AM 11:03

   97-5019

6. Check if covered: ☐ Products of Collateral     7. Number of additional sheets attached: ☐

_Dianne Wileman_                           _Oakwood Acceptance Corp_
Signature of Debtor                         Signature of Secured Party

_Melissa Wileman_                          _Anissa Reid_
Signature of Debtor                         Signature of Secured Party
                                           (Required only when filed without Debtor Signature)

(a) Filing Officer Copy - Alphabetical

## CHAPTER 13 PLAN
### UNITED STATES BANKRUPTCY COURT
### NORTHERN DISTRICT OF MISSISSIPPI          CASE NO. 08-10314-DWH

Debtor: DIANNE WILDMAN    SS # XXX-XX-2631        Current Monthly Income $2,419.08
Address: 127 Road 1559    Nettleton, MS 38858                No. of Dependents  0
Telephone No. 255-0402        TAX REFUNDS AND EIC FOR DISTRIBUTION:    0

**THIS PLAN DOES NOT ALLOW CLAIMS.** Creditors must file a proof of claim to be paid under any plan that may be confirmed, and the treatment of all secured/priority debts must be provided for in this plan.

**PAYMENT AND LENGTH OF PLAN**
The plan period shall be for a period of  42  months, not to exceed 60 months. Debtor or Joint Debtor will make payments directly to the Trustee ONLY if self-employed, unemployed, or the recipient of government benefits.

(A) Debtor shall pay $ ~~420.00~~ 493.00 per month to the Chapter 13 Trustee. A payroll deduction order will be issued to Debtors employer Milan Express, P.O. Box 699, Milan, TN 38358.

**PRIORITY CREDITORS.** Filed claims that are not disallowed to be paid in full:
IRS $_____ @$_____ /mo
State Tax Commission $_____ @$_____ /mo Other$_____ @$_____ /mo

**DOMESTIC SUPPORT OBLIGATIONS (POST PETITION) DUE TO: NONE**
**PREPETITION DOMESTIC SUPPORT ARREARAGE CLAIMS DUE TO:   NONE**

in the amount of $_____ shall be paid $_____ per month:
_____ through payroll deduction _____ through the plan.

HOME MORTGAGE(S)
MTG PMTS TO: Vanderbilt Mortgage  BEGINNING 5/1/08 @$ 519.51 ( X ) DIRECT
MTG ARREARS TO: Vanderbilt Mortgage $~~3,117.06~~ 3/22.06 from 11/1/07 THROUGH 4/30/08 @$~~74.22~~ 74.33
MO*

Debtor's Initials _DW_                        CHAPTER 13 PLAN, PAGE 1 OF 2

**SECURED CLAIMS.** Creditors that have filed claims that are not disallowed are to retain lien(s) under 11 U.S.C. 1325(a)(5)(B)(I) until plan is completed and be paid as secured claimant(s) the sum set out in the column "Total Amt. to be Paid" or pursuant to Order of the Court. That portion of the claim not paid as secured shall be paid as an unsecured claim.

| Creditors Name | Collateral | Approx. Amt. Owed | Value | Intrst. Rate | Total Amt. To Be Paid | Monthly Payment |
|---|---|---|---|---|---|---|
| National Auto Finance | 2001 VW | ~~$10,546.71~~ 10,741.46 | $7,500.00 | **10% | ~~$10,546.71~~ 13,207.44 | ~~$251.11~~ 314.46 |

** to be paid in full interest is included.

**SPECIAL CLAIMANTS.** (Co-signed debts, collateral for abandonment, etc.) ON ABANDONED COLLATERAL, DEBTOR TO PAY ZERO ON SECURED PORTION OF DEBT. Where proposal is for payment, creditor must file a proof of claim to receive proposed payment.

| Creditor's Name | Collateral or Type of Debt | Approx. Amt. Owed | Proposal to Be Paid |
|---|---|---|---|
| Nautilus | Bowflex machine | $1,800.00 1959.16 | Abandon pay $0.00 |

**SPECIAL PROVISIONS** for all payments to be paid through the plan, including, but not limited to, adequate protection payments: _____

**UNSECURED DEBTS** totaling approximately $ ~~15,497.723~~ (309 95) are to be paid in deferred payments to Creditors that have filed claims that are not disallowed: @ 2% (PERCENT).

Total Attorney Fees Charged $2,500.00.    Pay administrative costs and debtor's attorney fees
Attorney Fee Previously Paid $500.00   pursuant to Court Order and/or local rules.
Attorney fees to be paid through the plan $2,000.00.

Name/Address/Phone # of Vehicle Insurance Co./Agent

Attorney for Debtor (Name/Address/Phone # / Email)
Robert F. Levey
P.O. Box 743, Tupelo, MS 38802-0743
Tel: 62 840-1900/ Fax 662 680-3212
Email: ruffellbob@bellsouth.net

DATE: 2/9/08

DEBTOR'S SIGNATURE _____
JOINT DEBTOR'S SIGNATURE _____
ATTORNEY'S SIGNATURE _____

CHAPTER 13 PLAN, PAGE 2 OF 2

# United States Bankruptcy Court

IN RE: DIANNE WIDMAN, DEBTOR

CASE NO. 08-10314 DWH

### ORDER CONFIRMING THE DEBTOR'S PLAN, AWARDING A FEE TO THE DEBTOR'S ATTORNEY AND RELATED ORDERS

*Following the meeting of creditors held pursuant to 11 U.S.C. 341 at which the debtor appeared in person to be examined by creditors and other interested parties, a hearing was held pursuant to 11 U.S.C. 1324 at which the trustee appeared in person and the debtor appeared by his attorneys* _____

Continuances, if any, were: _____
Other appearances were: _____

*The debtor is hereinafter referred to in the masculine singular, even though this be a joint case or if the debtor is female. All references to "Rules" shall be interpreted as referring to the Bankruptcy Rules unless the context indicates otherwise.*

At such hearing, the following objections to confirmation of the debtor's plan were considered:

At the hearing, the Court considered the matters presented by the Trustee, counsel for the debtor and by other interested parties, if any, and upon the pleadings and statements of parties and of counsel, and on the evidence presented, the court finds that:

A. Written notice of the meeting of creditors held pursuant to 11. U.S.C. 341 and of this hearing on the confirmation of the plan was given as required by Rule 2002;
B. The plan as presented for confirmation (hereinafter referred to as "the plan") complies with the provisions of Chapter 13 of Title 11 of the United States Code and the other applicable provisions of said Title;
C. Any fee, charges, or other amount required under Chapter 123 of Title 28, or by the plan, to be paid before confirmation has been paid;
D. The plan has been proposed in good faith and not by any means forbidden by law;
E. The value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under Chapter 7 of Title 11 of the United States Code on such date;
F. With respect to each allowed secured claim provided for by the plan, the holder of such claim either accepted, or was deemed to have accepted, the plan or in the alternative:
   a. (i) the plan provides that the holder of such claim retain the lien securing such claim; and
      (ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; or
   b. the plan proposes to surrender the property securing such claim to the creditor.
G. If the trustee or the holder of an allowed unsecured claim objected to the confirmation of the plan, then the court finds that:
   a. the value of the property to be distributed under the plan on account of such unsecured claim is not less than the amount of such claim; or
   b. the plan provides that all of the debtor's projected disposable income, (as "disposable income" is defined in 11 U.S.C. 1325(b)(2)) to be received by the debtor in the three-year period beginning on the date that the first payment is due under the plan will be applied to make payments under the plan.

IT IS ORDERED THAT:

1. The debtor's plan is confirmed and (if appropriate) for cause shown, payments for a period not to exceed five years is approved.
2. The debtor, or his employer, shall make the payments to the trustee required by the plan as confirmed or as hereafter modified. If the debtor does not cause such payments to be timely made, the trustee shall order (per Section 542(b)) or request the Court to order (pursuant to Section 1326(c)) any entity from whom the debtor receives income to pay all or any part of such income to the trustee.
3. The debtor shall, when practicable, obtain the approval of the trustee prior to incurring additional consumer debt. The failure to obtain such approval if practicable, may cause the claim for such debt to be unallowable to the creditor (11 U.S.C. 1305(c)), and the debt to be nondischargeable for the debtor (11 U.S.C. 1328(d)).
4. All property shall remain property of the estate and shall vest in the debtor only upon dismissal, discharge, or conversion. The debtor shall be responsible for the preservation and protection of all property of the estate not transferred to the Trustee.
5. The trustee shall:
   a. Keep a detailed record of all receipts, including the source or other identification of each receipt, and of all disbursements (11 U.S.C. 1302(b)(1)); and
   b. File with the Court, or if applicable, with the entity providing addressing service for the Court and the Trustee, notices of creditor's address changes brought to the attention of the Trustee (Rule 2002(g)); and
   c. Deposit all funds received by the trustee under the plan with any entity which provides insurance, guaranties or deposits in the manner prescribed by 11 U.S.C. 345.
6. Pursuant to 11 U.S.C. 1326 the order of payment, unless otherwise directed, shall be:
   a. Any unpaid claim of the kind specified in Section 507(a)(1) of Title 11 U.S.C.;
   b. The percentage fee fixed for the trustee pursuant to Section 1302(e) of said title (or Section 586(e)(1) of Title 28, if applicable);
   c. Creditors whose claims are timely filed and allowed in such amounts and order of preference as may be provided by the plan or as may be required to provide adequate protection of the interest of any entity with an interest in the property of the estate.
7. The Trustee, the debtor and attorney for the debtor shall examine proofs of claim, or summaries thereof, and shall object to the allowance of improper claims as provided by 11 U.S.C. 704(4).
8. The Trustee shall at least once each six months file with the Court a report showing the funds received and the disbursements made by him since the date of the last report, and shall upon completion of the plan file with the court a final report and account containing or incorporating by reference a detailed statement of receipts and disbursements (Rule 13-208(5)).
9. Ninety days after the final distribution, the trustee shall stop payment of all checks then unpaid and file with the Clerk of the Court a list of the names and addresses, so far as known, of the persons entitled to such payments and the amounts thereof. The unclaimed funds shall be paid into the Court and disposed of under Chapter 129 of Title 28 (11 U.S.C. 347 and Rule 3001).

ALLOWANCE OF ATTORNEY'S FEES

The application by the attorney for the debtor for the allowance of reasonable compensation as authorized by 11 U.S.C. 330 having been considered, the court finds that a reasonable fee for the services performed and undertaken by such attorney is $ 2,500.00 , of which $ 500.00 was paid to such attorney prior to the filing of the petition initiating this proceeding.

The balance of such fee ($ 2,000.00 ) shall be paid by the trustee from the monies received under the debtor's plan, provided, however, that such payments shall be deferred in time to payments, if any, which may be required to provide adequate protection of the interest of the holders of any secured claims.

_____
BANKRUPTCY JUDGE

5/27/08

Approved:
_____
Attorney for the Debtor